**EXHIBIT 2**

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    PHIL GORDON,

4                    Plaintiff,

5              v.                        22 Civ. 2138 (JMF)

6    BLUETRITON BRANDS, INC.,

7                    Defendant.

8    ------------------------------x
                                         New York, N.Y.
9                                        October 20, 2022
                                         10:15 a.m.
10
     Before:
11
                        HON. JESSE M. FURMAN,
12
                                         District Judge
13
                             APPEARANCES
14
     JOSEPH & KIRSCHENBAUM LLP
15       Attorneys for Plaintiff
     BY:  YOSEF NUSSBAUM
16       DANIEL MAIMON KIRSCHENBAUM

17   OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
         Attorneys for Defendant
18   BY:  KELLY MARIE CARDIN
         JESSICA ROSE SCHILD
19

20

21

22

23

24

25

1          THE COURT:  This is in the matter of Gordon v.

2    BlueTriton Brands, Inc., 22 Civ. 2138.

3          THE COURT:  Before I take appearances, a couple of

4    quick reminders:

5          Number one, please mute your phones, if you can, to

6    ensure there is no background noise distraction.  Number two,

7    remember no unmute if or when you wish to say something, and

8    please begin with your name so that the court reporter and I

9    are clear on who is speaking.

10          Number three, remember that this is a public

11    conference, just as if it would be if we were in open court.

12    And finally, a reminder that it can't be recorded or

13    rebroadcast by anyone.

14          With that, I'll take appearances, beginning with

15    counsel for plaintiff.

16          MR. NUSSBAUM:  Good morning, your Honor.  Yosef

17    Nussbaum from Joseph & Kirschenbaum.  And, your Honor, my

18    colleague, Maimon Kirschenbaum is with me as well.

19          MR. KIRSCHENBAUM:  Good morning, your Honor.

20          THE COURT:  Good morning to both of you.

21          For defendant?

22          MS. CARDIN:  Good morning, your Honor.  Kelly Cardin

23    from Ogletree, Deakins for the defendant.

24          MS. SCHILD:  Good morning, your Honor.  Jessica Schild

25    from Ogletree, Deakins for defendant as well.

1      THE COURT:  Good morning to both of you as well.

2      Let me start with my ruling on motion to dismiss:

3      By bottom-line order dated October 13, 2022, I denied

4  Defendant's motion to dismiss for reasons to be explained here.

5  See ECF No.43.  I will explain those reasons now.

6      At the outset, though, I note that the majority of

7  Defendant's precise arguments have been considered and rejected

8  by a number of other judges in this Circuit, including Judge

9  Failla in Gillett v. Zara USA, Inc., No. 20-CV-3734 (KPF), 2022

10  WL 3285275(S.D.N.Y. Aug. 10, 2022); Judge Kovner in Rodrigue v.

11  Lowe's Home Centers, LLC, No. 20-CV-1127 (RPK), 2021 WL 3848268

12  (E.D.N.Y. Aug. 27, 2021), and Caul v. Petco Animal Supplies,

13  Inc., No. 20-CV-3534 (RPK), 2021 WL 4407856 (E.D.N.Y. Sept. 27,

14  2021); and Judge McAvoy in Mabev. Wal-Mart Assocs., Inc., and I

15  follow them here.  2022 WL 874311 (N.D.N.Y. Mar. 24, 2022).

16  Their opinions are thorough, well-reasoned, and persuasive, and

17  I follow them here.  That would be enough to deny Defendant's

18  motion, but I will add a little more flesh to these bones.

19      First, I conclude that there is Article III standing,

20  for substantially the same reasons that Judge Failla explained

21  in Gillett at *5-7 and Judge Kovner explained in Caul at *4.

22      Put simply, the late payment of wages is a concrete

23  harm.  Monetary injury is a quintessential injury-in-fact, and

24  there is an economic cost to the delayed receipt of money.

25  Moreover, Plaintiff alleges in his complaint not only that

1    he"lost the time value of money," but also that he was "unable

2    to do those things that every person does with their money,

3    such as paying bills or buying goods that he needed or wanted

4    to buy." Compl. ¶51.

5          Assuming the truth of these allegations, as I must, I

6    conclude that these concrete harms are far different than the

7    harms alleged in the line of Supreme Court cases that Defendant

8    relies upon, including Spokeo, Inc. v. Robins, 578 U.S. 330

9    (2016), in which there were ephemeral statutory violations

10   entirely divorced from real-world concrete injuries. Second, I

11   conclude that Section 198 of the New York Labor Law provides a

12   private right of action for the late payment of wages.

13         It is well established that I am bound to apply the

14   law as interpreted by a state's intermediate appellate courts

15   unless there is persuasive evidence that the state's highest

16   court would reach a different conclusion. See, e.g., V.S. v.

17   Muhammad, 595 F.3d 426, 432 (2d Cir. 2010).

18         Here, I see no persuasive evidence that the New York

19   Court of Appeals would reach a different conclusion than the

20   First Department did in Vega v. CM & Assocs. Constr. Mgmt.,

21   LLC, 107 N.Y.S.3d 286(N.Y. App. Div. 2019), when it held that

22   Section 198 expressly provides a private right of action to

23   remedy the untimely payment of wages.  Defendant's assertion

24   that Vega is "poorly reasoned" is insufficient for me to

25   conclude that Vega will be overturned or abrogated.

1          As Plaintiff notes, every district court in this

2     Circuit to consider the issue has followed Vega.  I will do the

3     same, substantially for the reasons explained by Judge Kovner

4     in Rodrigue at *5 and Caul at *2-3 and Judge McAvoy in Mabeat

5     *2-8.

6          Third, contrary to Defendant's arguments, I — at least

7     tentatively — conclude that liquidated damages in the form of

8     100 percent of the wages that were paid late are available as a

9     remedy under the Labor Law.

10         There is less precedent on this issue than on whether

11    a private right of action exists at all, but the cases that do

12    examine it, such as Rodrigue and Carrera v. DT Hosp. Grp., No.

13    19-CV-4235(RA), 2021 WL 6298654 (S.D.N.Y. Dec. 7, 2021),

14    conclude that liquidated damages are an appropriate remedy and

15    measure those damages by the wages paid late.

16         Moreover, I am persuaded by the reasoning of Vega,

17    which noted that liquidated damages are appropriate to

18    compensate workers for the late payment of wages because the

19    exact damages may be difficult to prove with precision.  107

20    N.Y.S. 3d at 288.

21         I will confess that I have some sympathy for the view

22    expressed by Judge Seibel in the transcript that Defendant

23    submitted last week (at ECF No. 42) — namely, that liquidated

24    damages in the form of the unpaid wages is a "kooky" remedy

25    where the injury is the time value of the delayed payment and

that it may raise due process issues – and, should as well note

that, if I had authority to do so, I might well find that

certification to the New York Court of Appeals would be

appropriate.

But Defendant did not actually raise the due process

issue here and, in any event, I agree with Judge Seibel and

with Judge Kovner's view in Rodrigue (at *6) that a due process

challenge would be premature at this stage.

Finally, I conclude that the fact that Plaintiff was

paid a salary is irrelevant.The definitions section of Article

6 of the Labor Law defines"[w]ages" as "the earnings of an

employee for labor or services rendered, regardless of whether

the amount of earnings is determined on a time,

piece,commission or other basis."  N.Y. Lab. Law §190.  In the

face of that broad, open-ended definition, Defendant relies on

cases from the nineteenth century, including In re Stryker, 158

N.Y. 526 (1899).

But this reliance is misplaced, not the least because

these cases were not interpreting the language of the current

statute.  As the New York Supreme Court explained in Jordan v.

Schreiber, Simmons, Macknight & Tweedy, No. 10506/93, 1994 WL

108011, at *2 (N.Y. Sup. Ct. Feb. 23, 1994), reliance on

Stryker is "unpersuasive as it ignores the definition of

'wages' and 'employees' which the legislature included in

[S]ection 190 of the amended Labor Law" in 1966 and "is also

1     inconsistent with more recent case law."

2          Recent cases do not support the distinction between

3     wages and salary that Defendant urges, and I conclude that the

4     definition of wages in Section 190 encompasses a broad range of

5     possible methods of monetary compensation for labor or services

6     rendered, including salary. For those reasons, Defendant's

7     motion was denied.

8          For all of those reasons, defendant's motion was

9     denied.

10          So that's my ruling on the motion.  And I, as noted in

11     the order, want to talk about the motion for class

12     certification, in part, based in part on that ruling.

13          I'm happy to set a briefly schedule.  But I guess more

14     broadly wondered whether there was any dispute about class

15     certification.  I certainly recognize that defendants might

16     have had arguments on the merits.

17          But in light of the ruling, there are fewer such

18     arguments to be made at this stage.  And in any event,

19     defendants might have some interest in a classwide resolution,

20     to the extent they would prevail -- obviously that would be res

21     judicata as to all class members.

22          Regardless, it would provide global resolution if

23     there were an alternative form of resolution.

24          So I guess I'll put the question to defense counsel.

25     Ms. Schild or Ms. Cardin, is there a dispute about class

1    certification?  If so, let's talk about a briefing schedule.

2    Or do you want to think about it?

3                MS. CARDIN:  Yes, your Honor, there is a dispute.

4                THE COURT:  Can you state your name.

5                MS. CARDIN:  Yes.  There is a dispute about class

6    certification.  So a briefing schedule would be appropriate.

7                I also wonder, your Honor, because I know that we teed

8    up the issue about the appropriate measure of damages in

9    connection with a motion to dismiss.  And obviously we have

10   just heard your ruling and are still digesting it.

11               But I wonder if your Honor might be open to some

12   separate briefing on that issue that we could work on alongside

13   the class cert and completing discovery issue because I hear

14   you on the premature issue.

15               But I think the way these cases have been playing out,

16   that's an issue that really needs to get decided and get to the

17   Court of Appeals so that there can be certainty one way or the

18   other.

19               So the short answer to the question is yes, we would

20   like a briefing schedule on the class cert issue and are also

21   requesting additional briefing on the appropriate measure of

22   damages here, if your Honor would be open to that.

23               THE COURT:  What would be your proposed vehicle for

24   that?  I'm open to it only in the sense that I think it is

25   probably -- I don't know what metaphor or expression to use --

1  probably the big issue here and to the extent that there is to

2  be any resolution, it would be in the interests of both sides I

3  would think to have a more definitive answer to that question.

4          That being said, what's the vehicle that you would

5  propose to do it?

6          MS. CARDIN:  Thank you, your Honor.

7          I have two potential vehicles, and I recognize that

8  this does not fit neatly into any procedure vehicle that I am

9  aware of.  But I wonder if it could be styled as perhaps a

10  summary judgment on the issue of damages.

11          I know generally that's not the vehicle you would use

12  for something like this or something along the lines of a

13  motion for declaratory judgment as to the appropriate measure

14  of damages.

15          THE COURT:  I'm not aware of the latter being a thing,

16  but the former may be.  I guess the only hesitation I have is

17  on my read of Judge Kovner's decision with respect to the

18  prematurity of the issue at the motion to dismiss stage makes

19  it seem as if this sort of due process issue at least would

20  depend a little bit on the facts and circumstances inquiry

21  whether the record is fully developed on that.

22          But in any event, Mr. Nussbaum, do you want to

23  address.

24          MR. NUSSBAUM:  Thank you, your Honor.  This is Joseph

25  Nussbaum.

1          Defendants already briefed this issue, and in the

2    Court's ruling that we just heard and that our office is still

3    digesting, your Honor said, as did Judge Kovner, that it is

4    just premature at this stage.

5          Of course down the line when the defendants want to

6    make a motion for summary judgment on the fully briefed record,

7    that's fine.  But echoing the Court, it does seem that the

8    first initial avenue is that the class should be certified or

9    the briefing should be completed on the class certification,

10   and then we should take up the merits issue.

11          THE COURT:  All right.

12          MS. CARDIN:  Your Honor, if I may.

13          THE COURT:  Your name though, please.

14          MS. CARDIN:  Sure.  This is Kelly Cardin again.  I'm

15   looking at the Rodrigue decision right now, and I think that

16   part of the reason why it was found to be premature is that it

17   was teed up on the motion to dismiss.

18          So when we're talking about damages here, I think that

19   a summary judgment motion on the issue of damages might be the

20   appropriate vehicle because at this point, we have exchanged

21   discovery.

22          We've given plaintiffs the payroll records so they

23   know the scope of damages.  So this is a relatively limited

24   issue that if we were given permission to move for summary

25   judgment at this point, I think it would really help to clarify

1   the issues in this case.

2          So we would request permission to do that.  Looking at

3   this decision that you've cited, I think the prematurity issue

4   really goes to the fact that it was teed up on the motion to

5   dismiss and not summary judgment.

6          I suppose, in the alternative, we only have a month or

7   so left of discovery.  So perhaps we could tee it up at that

8   point as well.

9          MR. NUSSBAUM:  Your Honor, could I jump in for a

10  minute.

11         THE COURT:  Hold on.

12         First of all, I just want to clarify that when I said

13  earlier that it was premature, I did mean in precisely that

14  sense, that is to say, I didn't mean to say it's premature as

15  of October 20.  It's premature on a motion to dismiss where I'm

16  limited to the facts alleged in the complaint.

17         This case is a little bit different in posture in the

18  sense that the parties have been engaged in discovery.  So in

19  that sense, if the record is fully developed on the issue, then

20  it may not be premature in the broader sense.

21         Having said that, I think Ms. Cardin's point that

22  there is only about a month in discovery might be well taken

23  and one possibility would be to handle the class certification

24  and perhaps put a pause on expert discovery pending a

25  resolution of that motion and then perhaps entertain a limited

1   summary judgment motion based on fact discovery alone.  I also

2   don't know if there is expert discovery to be done here, but

3   maybe that's a separate question.

4           Mr. Kirschenbaum, did you want to be heard?

5           MR. KIRSCHENBAUM:  Yes.  Thank you, your Honor.

6           With respect to the damages in this case, they are

7   also relatively straightforward, not necessarily in need of

8   expert discovery.  I think we can mull it over, especially in

9   light of the substantive decision that your Honor set forth

10  today.

11          But what I want to point out is that the defendants

12  made out their argument about the measure of damages.  Your

13  Honor substantively ruled, but I guess there is this next

14  argument of due process which is not currently a live issue in

15  this case.

16          It's been tangentially raised in other cases, but

17  there is nothing sitting out there that makes one think that

18  the due process argument needs to be addressed right this

19  second.

20          But what I would say is that given the

21  straightforwardness of the argument and the zero sum nature of

22  whether the due process argument carries the day or not, I

23  think it makes sense for us to cross-move for summary judgment,

24  if defendants are going to move for summary judgment.

25          We also don't need a lot more discovery to do that.

1    And if we're already going to tee things up at that level, why

2    not just finish this.  And if they win, they win.  And if we

3    win, we win.

4              THE COURT:  Just to drill down on the expert discovery

5    front, what expert discovery is there in this case?

6              MR. KIRSCHENBAUM:  The real issue is --

7              THE COURT:  This is Mr. Kirschenbaum?

8              MR. KIRSCHENBAUM:  This is Mr. Kirschenbaum.  Sorry.

9              THE COURT:  As a reminder, please start with your name

10   so that the record is clear so that who is speaking.

11             Go ahead.

12             MR. KIRSCHENBAUM:  Really the issue is do we go into

13   the weekly time records and figure out what each person was

14   owed every other week?

15             Or do we just take all of what they were paid and

16   divide it in half just to dumb it down a little bit, I think

17   that's the question of expert discovery.  We are totally fine

18   doing it the more simple way of cutting it in half monthly.

19             I don't think that that provides us any strategic

20   advantage as opposed to something we would have to discuss with

21   defendants in light of today's ruling.  I don't see why we

22   would need expert discovery unless we were giving each other a

23   hard time.

24             THE COURT:  I think, even if it were measured based on

25   the time value of money, it seems like it would be a relatively

1    simple arithmetic question.  So it's not clear to me that

2    there's a need for an expert.

3           Ms. Cardin.

4           MS. CARDIN:  Thank you, your Honor.

5           We don't see a need for an expert at this point.  With

6    respect to the cross-motions for summary judgment, I think what

7    opposing counsel is saying is that that would be on the merits.

8           And I think that that is a separate inquiry, summary

9    judgment on the merits, that needs to be addressed after the

10   class cert motion and after a limited summary judgment motion

11   on damages.

12          So what I would ask your Honor to do is to set a

13   briefing schedule at the close of discovery for our opposition

14   to the motion for class cert along with a motion for partial

15   judgment on the issue of damages.  I think that would be the

16   most efficient way to move the case forward.

17          MR. KIRSCHENBAUM:  Your Honor, this is

18   Mr. Kirschenbaum.

19          Could I just quickly respond to that?

20          THE COURT:  Sure.

21          MR. KIRSCHENBAUM:  If defendants want a summary

22   judgment decision saying that the damages should not be the way

23   they say they are, why shouldn't we be able to cross-move to

24   say that the damages somebody exactly the way that they say

25   they are?

1        THE COURT:  Let's talk about a briefing schedule on

2   class certification, and then we'll address summary judgment.

3        My current inclination is to say two things:  One is

4   that there is no need for expert discovery, at least at the

5   moment.  Given that, I think what we should do is finish fact

6   discovery, I should give you a ruling on class certification;

7   and then I think the right way for you to do this is for you

8   guys to confer about summary judgment motion practice, in light

9   of today's ruling, in light of the record, and see where things

10   stand and what you plan to move on.

11        It may be that the only issue to move on is the

12   question of damages, in which case, much of the discussion is

13   academic and it's just a question of figuring out the right way

14   to brief it.  But I think that would be the best way to proceed

15   here.

16        On class certification, Ms. Cardin, the motion was

17   filed I think 11 days ago.  Strictly speaking, under the local

18   rules, you would have three more days in which to respond.  But

19   I'm obviously prepared to give you more time than that.

20        What's your thought on a briefing schedule?

21        MS. CARDIN:  Thank you, your Honor.

22        Because it's a full motion for a class cert, we would

23   request that you give us until two weeks after the close of

24   discovery which would put us at December 12.

25        THE COURT:  Explain to me why you need that time.

1              In other words, why is the record not sufficient for
2       you to respond at this point?  It doesn't seem like it's
3       particularly based on the factual record.  Or, to the extent it
4       is, it seems like that doesn't necessarily mean waiting until
5       the end of fact discovery.
6              MS. CARDIN:  Respectfully, your Honor, I think that
7       there is a lot of factual distinction between what these
8       physicians were doing.  And I think that our opposition, in
9       terms of the merits, is going to be built, in large part, on
10      the idea that in order for an individual to qualify as a manual
11      worker, that specific individual must have been spending at
12      least 25 percent of the working time doing manual labor.
13             So from our perspective, this is a highly
14      individualized inquiry and we're going to need to put together
15      a lot of that information in terms of what a representative
16      sampling of the people in the purported class have been doing,
17      because pursuant to the guidance on who is a manual worker, it
18      is a case-by-case individual inquiry.  So we need additional
19      time to gather that information.
20             THE COURT:  All right.  Mr. Nussbaum or
21      Mr. Kirschenbaum.
22             MR. NUSSBAUM:  Yosef Nussbaum, your Honor.  Thank you.
23             I don't fully understand defendant's position.  The
24      way things currently stand in discovery, they have produced all
25      documentary evidence relating to these categories of delivery

 1   drivers.

 2          We took a 30(b)(6) deposition and discussed all the

 3   categories, and the result of the documents and all the

 4   testimony is that these guys are delivery drivers.  There might

 5   be slight variation, but there is nothing close to anything

 6   that would take them to 25 percent or less of their time

 7   working as manual laborers.

 8          It's somewhat concerning that there would be other

 9   information out there that defendants intend to produce -- we

10   have three months of discovery -- that would change the current

11   calculus.

12          MS. CARDIN:  Your Honor, this is Kelly Cardin.

13          I think maybe part of the confusion is that under

14   certain DOL opinion letters, driving itself is not manual

15   labor.  So that can't be count the towards the 25 percent.

16          And there has been no testimony from the 30(b)(6) and

17   nothing in the documentation establishing what percentage of

18   these workers' time was spent doing these other manual task.

19          So we're anticipating doing some depositions and

20   gathering additional information to establish that this should

21   not be treated on a class basis because what each individual

22   driver was doing on a given day of a given day of a given week

23   of a given month varies greatly across the board.  So that

24   25 percent threshold is going to be a problem for plaintiffs

25   here for plaintiffs here.

1        THE COURT:  Are there not issues and facts that you

2   would be privy to?

3        In other words, they seem to be within defendants'

4   possession more than plaintiff's possession.

5        MS. CARDIN:  We still have to depose plaintiff, your

6   Honor.  The 30(b)(6) deposition was two weeks ago.  So we just

7   need additional time.  Discovery was rather short in this case.

8   We only had a few months.  So we just need additional time to

9   gather the rest of the information and put together our

10  opposition.

11       THE COURT:  And are the depositions of plaintiffs

12  scheduled?

13       MS. CARDIN:  I don't believe we noticed it yet, but we

14  can get that out today or tomorrow.

15       THE COURT:  So I will set the deadline for -- well, I

16  was going to set it for the day that discovery, fact discovery,

17  closed.  But that is the Monday after Thanksgiving.

18       So why don't I give you until that Friday, December 2,

19  to file any opposition to the class certification motion.  I'll

20  give plaintiffs two weeks, December 16, to file any reply.

21       My inclination would be to defer summary judgment

22  motion practice until after you have a ruling on class

23  certification since it seems like that would have a big impact

24  both on settlement posture but also on what the summary

25  judgment would look like.

1              Does everybody agree with that?  Defense is there.

2              MS. CARDIN:  Your Honor, this is Kelly Cardin.  Thank

3     you for that briefing schedule.  I may have misunderstood what

4     Maimon was saying.

5              Maimon, I thought you were saying that you wanted to

6     move for summary judgment on the merits.  That's what I

7     understood you to be saying.  But I have no objection to both

8     sides moving for partial summary judgment just on the issue of

9     damages around the same time we're briefing this or even

10    sooner.

11             I wouldn't be opposed to that.  So I'm sorry that I

12    misunderstood you, but I'm not opposed to cross-motions for

13    partial summary judgment just on the issue of damages.  It

14    seems to me that that would help clarify the issue.

15             MR. KIRSCHENBAUM:  This is Maimon Kirschenbaum, your

16    Honor.  Could I speak.

17             THE COURT:  Yes, although maybe the best course here

18    is what I averted to earlier, which is you guys should discuss

19    this.  If in fact the only issue that anybody would be moving

20    summary judgment-wise is the damages issue, then I agree.  It

21    may not require a ruling on class certification, and it may pay

22    to have that briefed while I'm deciding the class certification

23    motion.

24             If either side intends to move more broadly, then

25    perhaps it's a different issue and I would need to decide

1   whether I would allow piecemeal summary judgment practice or

2   not.

3           So I guess my inclination is to let you guys talk

4   through these issues and maybe submit a joint letter proposing

5   how to proceed on summary judgment in relation to class cert or

6   not, let's say within a week or two of now.

7           Does that make sense, Mr. Kirschenbaum?

8           MR. KIRSCHENBAUM:  I just want to address what

9   your Honor just said, which is where my head was at.

10          I think that the issue on which we'd be cross-moving

11  for summary judgment, after what your Honor's substantive order

12  today, is the whole issue.  So I do think it is piecemeal.  I

13  think it makes sense to get a class cert out of the way so that

14  if we're going to move for summary judgment and win, then we've

15  won for the class and, if we're going to lose, then we've lost

16  for the class.

17          Defendants keep referring to it as a "partial summary

18  judgment motion," but it's pretty much the entire ball at this

19  point.  So I'm happy to move quickly, but we've got to get

20  class cert out of the way for this to make sense.

21          THE COURT:  Ms. Cardin, it doesn't dissuade me from

22  thinking that the best course here is to let you guys talk

23  through these things and submit a joint letter proposing how to

24  proceed.  You may end up agreeing.  It may be that there is

25  more to this than either of realize at the moment.  But in

1    either case, some time to process may make sense.

2              Ms. Cardin?

3              MS. CARDIN:  That's fine, your Honor.  I'm happy to

4    think and then discuss it with opposing counsel.

5              THE COURT:  So why don't we do that.  I set the

6    briefing schedule for class certification.  So that will be

7    fully submitted on December 16.

8              For the moment, I'm going to say that discovery will

9    close with the end of fact discovery.  And to the extent there

10   is a need for expert discovery, we will revisit that at some

11   later date.

12             And I will finally require that you submit a joint

13   letter let's say within two weeks of today with respect to

14   either an agreed upon schedule for summary judgment or

15   competing schedules, if there is disagreement.

16             I will note that to the extent that the motions are

17   overlapping -- well, actually, regardless, I will say if both

18   sides intend to move, my preference would be to structure

19   things so that one side makes an initial motion, the other side

20   then cross-moves and files an opposition and that is done in a

21   consolidated fashion so there is a single brief cross-moving

22   and opposing.

23             And then the first party would then be able to file a

24   reply/opposition.  And then the second party would file a reply

25   so that there are four briefs rather than six briefs that cross

1  each other in the night.  So you should confer with that in

2  mind.

3        But I'll look for you to make a proposal in the

4  first instance, both with respect to structure and with respect

5  to a schedule and how to coordinate it with class

6  certification.

7        I'm assuming that it's premature to discuss anything

8  related to settlement because some of the issues that we've

9  discussed today need to be resolved before any discussion on

10  that front would be worthwhile.

11        Is that your view, Ms. Cardin?

12        MS. CARDIN:  We are in settlement discussions.  So I

13  don't think we need anything from the Court on that front at

14  this point.

15        Maimon, do you disagree?

16        MR. KIRSCHENBAUM:  We've had more than just

17  preliminary discussions at this point.  So we may settle it.

18        THE COURT:  If that changes, that is to say, if there

19  is anything I can do to facilitate those discussions,

20  definitely, let me know.  Obviously let me know if you reach

21  settlement, as you probably will have to do, given the nature

22  of the case.  Otherwise, I won't do anything on that front now.

23        Anything else, Mr. Kirschenbaum?

24        MR. KIRSCHENBAUM:  Nothing further here, your Honor.

25        THE COURT:  Ms. Cardin?

1          MS. CARDIN:  Nothing further here, your Honor.  Thank

2     you.

3          THE COURT:  Thank you very much.  Have a great day.

4          MS. CARDIN:  Thank you.

5          MR. KIRSCHENBAUM:  Thank you.

6          (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25