**EXHIBIT 3**

```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK

------------------------------X  Docket#
GABRIEL RODRIGUEZ,            :  2-cv-02436(GRB)(JMW)
                             :
              Plaintiff,      :
                             :
   - versus -                :  U.S. Courthouse
                             :  Central Islip, New York
WILLIAMS-SONOMA, INC.         :
                             :  August 5, 2022
              Defendant       :  3:31 p.m.
------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE
PRE-MOTION HEARING
BEFORE THE HONORABLE GARY R. BROWN
UNITED STATES DISTRICT JUDGE


**A  P  P  E  A  R  A  N  C  E  S:**
(**VIA VIDEO/AUDIO**)


**For the Plaintiffs**:        **Alec M. Leslie, Esq.**
                              **Yitzchak Kopel, Esq.**
                              Bursor & Fisher, P.A.
                              888 7th Ave, 3rd Floor
                              New York, NY 10106


**For Defendants**:            **Ashley J. Hale, Esq.**
                              **Lincoln Owens Bisbee, Esq.**
                              **Dana A. Brady, Esq.**
                              Morgan Lewis and Bockius LLP
                              101 Park Avenue
                              New York, NY 10178



**Transcription Service**:     **Transcriptions Plus II, Inc.**
                              61 Beatrice Avenue
                              West Islip, New York 11795
                              RL.Transcriptions2@gmail.com



Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings                                        2

1          THE CLERK:  Calling case 22-cv-2436, *Rodriguez*
2    *v. Williams-Sonoma, Inc.*
3          Counsel, please state your appearance for the
4    record.
5          MR. KOPEL:  Good afternoon, your Honor.  This
6    is Yitzchak Kopel of Bursor & Fisher, P.A. for the
7    plaintiff.  Joining with me today is my colleague Alec
8    Leslie.
9          MS. HALE:  Good afternoon, your Honor --
10         THE COURT:  Okay.
11         MS. HALE:  -- this is Ashley -- oh, sorry.
12         THE COURT:  No, no, go ahead, go ahead.  Sorry.
13         MS. HALE:  Okay.  You have Ashley Hale from
14   Morgan Lewis for defendant Williams-Sonoma.  And I have
15   with me Dana Brady and Lincoln Bisbee.
16         THE COURT:  Excellent.  Anybody else?  All
17   right.
18         Okay, counsel, we're here for a pre-motion
19   conference.  And as you know from my rules and the order
20   establishing today's conference, anyone can make any
21   motion they want.  I don't stop you from making motions.
22   But I reserve the right to deem the motion made and
23   decided based on the submissions, which by the way, were
24   quite good, as well as the arguments of counsel.  So feel
25   free to argue anything you want.

Proceedings                                    3

1              This is the defendant's motion so let me go to

2      defendant and why don't you summarize the motions for me,

3      please?

4              MS. HALE:  Sure.  Thank you very much.

5              So as your Honor knows, like other judges in

6      the eastern and southern districts, I think you're

7      becoming more and more familiar with these New York Labor

8      Law 191 cases where the only claim is that employees were

9      paid their full wages up to seven days late.  This is not

10     a case where the employee has not been paid.  It's not a

11     case where employees are working off the clock.  These

12     are just cases where employees have been paid every

13     single penny they're owed but they are just claiming that

14     half of their pay was paid in full but a week late.  And

15     so as a result of that payroll era, they are now entitled

16     to a penalty of 100 percent of the late payment for the

17     last six years.

18             This is a very important issue that can

19     literally bankrupt a company that is otherwise fully

20     employing their employees that we think will eventually

21     go to the Court of Appeals.

22             So for this reason I will appreciate the

23     opportunity to explain why we do not think the plaintiff

24     can maintain the statutory penalty claim now.

25             Our first reason is that the plaintiff does not

Proceedings                                          4

1   have Article 3 standing to assert this claim.  As the

2   Supreme Court recently explained in the *TransUnion* case,

3   Article 3 grants federal courts the power to redress harm

4   the defendants caused plaintiff, not a free wheeling

5   power to hold defendants accountable for legal

6   infractions.

7          So here plaintiff and their counsel who has

8   filed no less than 25 of these exact same complaints over

9   the last year are trying to hold the defendant

10  accountable for legal infractions despite the fact that

11  these employees, again who've been paid for every minute

12  of work, has not actually been harmed.  To show there's

13  been harm which is --

14          THE COURT:  Can I stop you for a second?

15          MS. HALE:  Sure.  Yes.

16          THE COURT:  You're quite correct that we here

17  in the eastern district are getting quite hip to many of

18  these actions --

19          MS. HALE:  Yes.

20          THE COURT:  -- and issues and the *TransUnion*

21  thing has had an incredible effect on the docket.  So I

22  understand the issue --

23          MS. HALE:  Okay.

24          THE COURT:  -- I got below except for one

25  problem which is this.  Let's assume, and I know there

Proceedings                                              5

1   are other pieces to your motion.  We'll get there.

2              MS. HALE:  Sure.

3              THE COURT:  Let's assume there was a right to

4   be paid weekly.  Let's just assume that.  In that case,

5   and this is harder to understand.  You know, we're not in

6   person.  I'm assuming you're much younger than me.  You

7   must be because I'm old.  But a year or two ago people

8   who were younger than me, it was hard to explain the time

9   value of money because interest rates were effectively

10  zero.  But that's changed.  And that's always been

11  different.  Right?  That always changes.  In a world of

12  interest rates, there is time value of money.  So how can

13  I say that they've had absolutely no harm and they lack

14  any standing when the Supreme Court made clear if there's

15  any harm at all, it's harm.  Isn't that the same?

16             MS. HALE:  Because he's not alleged that he's

17  been harmed.  He's just alleged that he could have

18  invested, he could have earned interest on, or he could

19  have done these things.  He doesn't say that he was going

20  to do them or that he's forewent the opportunity to do

21  them which is what the *Smash Burger* case requires.  It

22  doesn't say that you could be harmed.  You have to say

23  that you forewent an opportunity.  He could have, if he

24  was paid weekly, he could have put the money under his

25  mattress and then he would have no harm at all.  So the

Proceedings                                          6

1   complaint has conclusory allegations of what he could

2   have done with the money.  It does not allege that he

3   actually was harmed.

4           And I think that all of the time value of money

5   cases predate the Supreme Court's decision in *TransUnion*

6   and the Second Circuit's decision in *Maddox* and the

7   eastern district's decision in *Smash Burger* saying that

8   you have to have factual allegations that you forewent

9   the opportunity to invest or use the money.  It doesn't

10  say anything about that you have to actually have those

11  allegations.  And here there is no claim that the

12  plaintiff forewent any of these opportunities.  And it's

13  not like the money was withheld for years and years and

14  years.  It was one week, so --

15          THE COURT:  Well yes, I understand that.  But

16  let's assume, right, I mean (indiscernible) Rule 12

17  motion and allow liberal pleading.  You know, the

18  plaintiff (indiscernible) from time to time this

19  plaintiff deposited some piece of his salary, maybe it

20  was $4 a month, whatever it is, into a bank account.

21  They're there, right?  That crosses the (indiscernible),

22  yes?

23          MS. HALE:  If it was -- he has not alleged that

24  it is an interest bearing account that it was put into.

25          THE COURT:  Okay.  So clearly it's the

Proceedings                                                7

1  allegation, right?  That from time to time he put money

2  into a bank account even if it was $4 a month and that he

3  was not paid interest.  We're there, yes?  At that point.

4  That's some harm.  It's not -- it's small and --

5          MS. HALE:  Right.  But that's not what is

6  alleged here.

7          THE COURT:  Okay.  I hear you.  I hear you.

8  Okay.  I hear that point.  Let me actually just stop you

9  right there and I'm going to go to plaintiff and say are

10  you in a position to make any such allegation?

11          MR. KOPEL:  I'm sorry, your Honor, I didn't

12  hear that question clearly.

13          THE COURT:  I said are you in a position to

14  make any such allegation?  Meaning I said that if your

15  client alleges at some point in time he would deposit

16  some portions of his salary into a bank account that paid

17  some degree of interest, can you make any such

18  allegation?

19          MR. KOPEL:  The answer is yes, but that

20  allegation would transfer our current allegations which

21  are concrete into something which is hypothetical.  It's

22  the exact opposite of what Ms. Hale is arguing right now.

23  So --

24          THE COURT:  No, no, no.  Wait, wait, wait.  You

25  didn't see the problem, right?

Proceedings                                          8

1          MR. KOPEL:  So the answer is yes.  I'm sorry.

2          THE COURT:  Okay.  Well yes, I'm just saying

3     it's a fact that most people don't spend every penny and

4     they put some money in the bank.  Right?  So her argument

5     to me is he said he forewent investment opportunities

6     without being specific.  But if he actually put some

7     money in the bank and it paid some interest, even if it's

8     a quarter of a cent or whatever he lost, I think you've

9     caused the concrete standing issue.  See what I mean?

10         MR. KOPEL:  Of course.  But I think we already

11    did without saying that because I don't think you need to

12    say what someone hypothetically would have done if he had

13    the money.  That is hypothetical what he would have done.

14    The concrete injury is that he was deprived of the use of

15    money and that's exactly what we alleged.  It's like

16    saying if I win the lottery, what would I do with the

17    money?  And that's a fun exercise but it's speculative.

18         THE COURT:  No, but not really in the following

19    sense.  I would presume that your guy actually did -- you

20    made an interesting argument that I didn't think about

21    which is inflation.  Right?  You know, you can show that

22    he bought gas one week and didn't get the money till the

23    next and so therefore he paid more money, he paid more

24    for the gas that he bought, or something.  There's some

25    other way to do this.  But I'm saying if you have, not

Proceedings                                               9

1   hypothetical, but he actually used a bank, a bank account

2   that paid interest, right, to house some or all of his

3   savings from his salary, that strikes me as even more

4   concrete than your suggestion that he would have invested

5   money.  You see what I mean?

6           MR. KOPEL:  I assume, but it's still

7   speculative that he would use specific money for a

8   specific purpose.  The answer is I am not familiar, you

9   know, with the specifics of my client's bank account.  I

10  have no doubt if I speak with my client I could learn

11  that there is either a bank account or there was some,

12  you know, some issues paying bills from time to time, or

13  even just merely the inability to buy something maybe

14  that he wanted to buy at some point.

15          But you know, I do want to urge the Court to

16  consider that none of that is what's required.  The case

17  law is very clear that the time value of money has worth

18  itself, and we've noted that in our letter.  The Seventh

19  Circuit has said that.  Judge Cote has said that.  This

20  issue --

21          THE COURT:  Right.  Just --

22          MR. KOPEL:  I'm sorry.  Go ahead, y.

23          THE COURT:  Counsel, you kind of had me at

24  hello on this one.  I'm kind of with you.  Right?

25          MR. KOPEL:  Okay.

Proceedings                                    10

1          THE COURT:  That's not to say that certain

2     problems aren't coming.  But on this particular issue I

3     tend to side with you.

4          Let me go back to defendant's counsel.  And

5     tell me about this issue about whether or not there's a

6     private right of action under the statute.

7          MS. HALE:  So, your Honor, we do not believe

8     there is a private right of action under the statute.

9     For 130 years, no one thought there was a private right

10     of action.  This is enacted in 1890.  And until *Vega*,

11     which is a seven paragraph opinion which I think Judge

12     Chen called tortured, and all of a sudden found this

13     private right of action.  We think one, *Vega* is wrong.

14     And when the Court of Appeals gets this issue before it,

15     we think they will find it wrong.  And we also think that

16     under *Concur* it's no longer good law.  *Vega* is wrong

17     because it didn't analyze the structure of the New York

18     Labor Law, it didn't examine how the DOL is actually

19     tasked with enforcing non-wage claims, didn't review the

20     statutory history which is simply too long to discuss on

21     the phone today, so we would appreciate the opportunity

22     to brief that.  And so *Vega's* decision created this tidal

23     wave of this class action litigation seeking colossal

24     damages for payroll errors.

25          And so we think that neither the text of 191 or

Proceedings                                11

1  198 provides an expressed private right of action

2  regarding the frequency with which payroll is processed.

3  There's no reference to damages or civil action, so

4  there's no private right.

5          And so where there is a private right of

6  action, it is specifically called out.  So for example,

7  198.1B says there's a private right of action for failure

8  to provide a wage notice.  198.1D says there's a private

9  right of action for failing to provide wage statements.

10 But there's no reference in 198 to a private right of

11 action for a 198 frequency of pay violation.  The Labor

12 Law -- the legislature gave the DOL, not private parties,

13 authority to enforce these non-wage claims for frequency

14 of pay violations.  And then New York Labor Law 218

15 explains the discretion that they get to use to impose

16 the penalties.

17         So it's not that there is no incentive or

18 penalty if the company does not comply with the

19 requirements to pay weekly.  The DOL can issue fines if

20 it finds that the company is failing to comply.  But 191

21 and 198 have no expressed private right of action.

22         And then the recent decision in *Concur* by the

23 Court of Appeals makes clear that you cannot infer a

24 right of action.  And they went through the three factor

25 test to see if you can imply a private right of action so

Proceedings                                    12

1   if it's a class who benefits the statute was enacted or

2   would promote legislative purpose or if it's consistent

3   with the legislative scheme.  And they found that because

4   the statutory scheme in Article 6, which is where New

5   York Labor Law 191 falls, provides two robust enforcement

6   mechanisms, you know, you can't find another enforcement

7   mechanism beyond the statute's comprehensive scheme.

8           So where the legislature intends for an Article

9   6 provision to be enforced individually, it expressly

10  provided a private right.  And here, 191 is in Article 6

11  and there is no private right of action for the frequency

12  of pay violation.

13          THE COURT:  Right.  So I'm going to say

14  something now.  Let me just shorthand this.  It's Friday

15  afternoon, everybody wants to go home.  Plaintiff's

16  counsel, I assume you agree, based on *Vega*, et cetera,

17  yes?

18          MR. KOPEL:  Well that I agree what based on

19  *Vega*?  I'm sorry.

20          THE COURT:  You disagree.  You disagree.  You

21  think you're right.

22          MR. KOPEL:  Of course, of course I disagree

23  based on the --

24          THE COURT:  Right.  So here's why, and I would

25  love to hear from you but it's Friday afternoon and I

Proceedings                                        13

1    want to get everybody home.  So I just want to say I

2    didn't think this was an issue at all.  I had it in

3    another case and in fact, I'm going to give you the

4    citation on that case, if you all want to look at it.

5    It's *Birthwright v. Advance Auto Parts*.  I don't have the

6    CV number in front of me, but they're briefing that for

7    me on August 29th.

8            And the reason I bring that up is because when

9    defense counsel in that case first brought -- oh by the

10   way, I do have the CV number.  It's 22-593 if you want to

11   look at the papers when they come in.  When defense

12   counsel first raised that I said come on, I was imagining

13   just settle these cases, and we've done 1,000 of them.

14   What are you talking about?  And then I heard this

15   argument which is similar to the argument I heard today.

16           So it sounds to me like it's a horse race.  And

17   what I'm going to say to you all is I'm going to need you

18   to brief that one for sure.  Right?  Because we've got to

19   look at that.  I'm going to look at it in *Birthwright*.

20   I'll look at it in this case.  Maybe I'll issue a joint

21   opinion for both cases.  I would love to certify the

22   question to the Court of Appeals of New York State but of

23   course I'm not allowed to do that.  And I only say that

24   for one reason, just to that my own problems for a

25   moment, I recently learned that most other states allow

Proceedings                                    14

1   district judges to do that.  But here only the Court of

2   Appeals can do it.  So I have to guess and get it wrong,

3   and then they send it to the Court of Appeals and say oh

4   he's so wrong.  So you know, we'll see how this goes.

5   But I'm going to give it my best shot.  Okay?

6           But it does sound to me like an interesting

7   issue and I'm happy to take a look at it.  But both of

8   you, and unfortunately, like the other case I mentioned,

9   it sounds like it has great counsel on this case too.  So

10  I'm sure you'll do a great job.  And then I'll try to

11  figure this one out because it is an interesting issue.

12  I understand that the only, I believe the only Appellate

13  Division case is the Third Department's case which how

14  that binds me is an interesting question I think.  I'm

15  supposed to yield to Second Department law and if there

16  isn't any, I guess we're writing on a blank slate.  I

17  don't know.

18          So at the end of this we'll figure out how long

19  it's going to take to brief that and how we'll set that

20  up.  Okay?

21          But let's jump to the last two issues.  And

22  again, to save time, I know you have these issues about

23  whether this is a failsafe class and so forth.  My only

24  question here is why isn't this -- why weren't those

25  issues more properly conserved and raised at the time

Proceedings                                                    15

1   where we do class certification, assuming we get that

2   far?

3                MS. HALE:  So this is the simplest way that I

4   think about how this is a failsafe class.  The complaint

5   defines the class as all manual workers employed by

6   defendant in New York State over the last six years.  If

7   somebody told me right now hand over a list of manual

8   workers, hand me the class list, I couldn't do it.  I

9   don't know who is on that list until I look at every

10  employee in the state and see what did they do, how long

11  did they do it, where did they do it, are they in

12  Williams-Sonoma, are they in West Elm?  Which store?  Who

13  is the manager?  What did this manager ask to do?  What

14  did that manager do?  I can't find a class list without

15  determining the ultimate question of liability which is

16  is this person doing manual work?

17               THE COURT:  Right.  Well presume --

18               MS. HALE:  I couldn't make a class list.

19               THE COURT:  I hear you.  And of course we're

20  not there yet.  Right?  That would be part of sort of the

21  class discovery piece I think.  But the plaintiffs,

22  plaintiff's counsel has one plaintiff, right?  They have

23  a plaintiff who will come in and say I was there and I

24  only got paid biweekly.  So I don't know if that's

25  something that's done by worker or by sort of category.

Proceedings                                    16

1   So whatever the position was, forgive me, I'm not
2   remembering at this moment, you know, he's a store
3   manager or --
4           MS. HALE:  He doesn't say.  He doesn't say.  We
5   actually don't know his position.
6           THE COURT:  But you know what he did.  Right?
7   You have it somewhere.  And you say okay, he was a store
8   clerk and he claims, right, that more than 25% was manual
9   labor or whatever.  So the question becomes isn't it a
10  class of store clerks if that were the right word?
11          MS. HALE:  But that is not -- he doesn't say
12  that.  He doesn't say it's a class of store clerks.  He
13  just says it's all manual workers.  So he doesn't say
14  he's a clerk.  He doesn't say what he does.  He -- in
15  fact, I don't even think in this complaint says that he
16  worked at West -- he does say that he worked at West Elm.
17  He just said that he worked at West Elm doing manual
18  labor.  That's it.  And so it is the class definition we
19  think is per se and proper.
20          So it can be addressed at the pleading stage
21  because it requires to find out who was in the class,
22  there has to be a determination basically on liability as
23  to whether someone is a manual worker.
24          THE COURT:  All right.  So let me go back to
25  plaintiff's counsel and say she threw down the gauntlet.

Transcriptions Plus II, Inc.

Proceedings                                    17

1   She used language.  She said it's not a per se class.

2   What do we do here?  What's the story on the class

3   situation?

4            MR. KOPEL:  Yeah.  I think defense counsel

5   perhaps inadvertently said that she can't tell who's a

6   manual worker until she goes through the evidence and

7   that's exactly right.  We need to go through the evidence

8   to understand the various jobs that exist at the

9   defendant's companies and only then can we really narrow

10  it down.

11           THE COURT:  Let me ask you a question that I

12  think defense counsel is hitting on but it's not really

13  essential to our argument, but I find much more

14  interesting which is this.  Let's assume that -- do you

15  know the title that your guy held at the place?

16           MR. KOPEL:  I do but I don't have it in front

17  of me.  I'm sorry.

18           THE COURT:  Neither do I.  That's fine.  But

19  let's say, you know, he's a salesperson or floor -- I

20  think he was like a floor salesperson if I remember the

21  papers right.  Something like that.

22           MR. KOPEL:  He was unloading inventory from

23  trucks and unpacking it, et cetera.

24           THE COURT:  Right.  But my only question to you

25  is this.  If floor salespeople, right, or floor

Proceedings                                    18

1   representatives, whatever he was called, if some of them

2   would fall into the category of manual laborers and

3   others don't, what do we do?  If it's not across a title.

4   How do you handle that?  Is it one of those situations

5   where you say well then we can't actually have a class

6   because each person has to have a separate hearing.

7           MR. KOPEL:  I think that that's an argument

8   that, you know, would be very hypothetical and maybe the

9   defendant could consider that based on what comes to

10  light in discovery.

11          THE COURT:  Okay.

12          MR. KOPEL:  But that question only highlights

13  the futility of discussing this right now.  There's an

14  imbalance of access to information.  And class

15  certification, the Supreme Court has said, has to be

16  based on evidence.  So they can't -- they're trying to

17  demand something impossible from me by saying I need to

18  have had the evidence before I filed the complaint and

19  that's simply not the standard.

20          THE COURT:  Yes.  No, you kind of had me at

21  hello except for that little interesting issue about -- I

22  can imagine, right, if you have like people in a detailed

23  circumstance, sometimes one person might just work the

24  cash register all day and the other person might be

25  actually unloading trucks, but they have the same title.

Proceedings                                    19

1  So what do you do?

2              MR. KOPEL:  I don't think that's going to be --

3              MS. HALE:  So how --

4              MR. KOPEL:  I'm sorry, let me just respond,

5  please.  I don't think that that's going to be an issue

6  because there's going to be job titles and there's going

7  to be job responsibilities and there is going to be, you

8  know, maybe if someone just works a cash register on

9  certain days but they're doing other things on other

10 days, you know, the Department of Labor says it depends

11 on what percentage of their job was spent doing physical

12 labor.  And I believe the evidence is going to show that

13 a large super majority of employees at these companies

14 were doing physical labor a minimum of 25 percent of the

15 time.

16              But if the evidence shows otherwise, then when

17 we move for certification, we will move for a narrower

18 class which is permissible, and that's what we're

19 supposed to do.

20              So you know, again, I don't think it's

21 appropriate to really examine or think too hard about

22 these questions now because I don't have the evidence.

23 And it's just unfair to expect to have an answer now when

24 we don't know what the evidence shows.

25              THE COURT:  So I'm sorry, I --

Proceedings                                    20

1          MS. HALE:  Your Honor, if I --

2          THE COURT:  Let me just say this to counsel as

3    sort of a hypothetical.  I moonlight as a professor, so I

4    can't help it.  You know what I mean?  I just have to do

5    it because of law school, a hypothetical question.  Sorry

6    about that.  Anyway, I apologize.

7          Back to defendant's counsel, please.  Yes, go

8    ahead.

9          MS. HALE:  But your Honor, I think you are

10   hitting on the exact point of why this is a failsafe

11   class.  If there is a person who is a cashier who never

12   does any manual work, that person is not a manual worker

13   and would not be included on a class list, and would not

14   be included on a class.  And so to know that, we would

15   have to look at that person and then they get excluded

16   from the class.  A determination has been made about

17   potential liability as to that person and that is the

18   exact definition of a failsafe class.

19         The ultimate question is in the definition of

20   the class.  It's just impermissible even at this stage.

21   I understand that certification and discovery to find out

22   more information, but the way the class is defined by

23   using the term manual worker, it's improper at this stage

24   for the exact reasons that you pointed out.

25         THE COURT:  Okay.

Proceedings                                    21

1          MS. HALE:  We can't determine who's a manual

2     worker without looking at each person individually.

3          THE COURT:  Understood.  All right.  Thank you.

4          Counsel, let me just say I'm going to rule on

5     this in part.  And before I do that, let me just say,

6     because you won't care, once I rule you're not going to

7     care about this part, but everyone did a really good job.

8     Thank you for that.  It's refreshing to have really good

9     lawyers who know the stuff and are prepared and get the

10    arguments and even put up with my hypotheticals.  So

11    thank you.

12         That said, I'm going to rule on the motions in

13    part.

14         First of all, as I mentioned at the beginning,

15    I reserve the right to deem the motion made and rule on

16    it.  And the reason I'm doing that is to try to save

17    everybody time and effort and move things along more

18    quickly consistent with Rule 1.  We have an obligation to

19    do so as well as the rules of human decency and try not

20    to be wasteful.

21         So to save everyone some time, I'm going to

22    rule on parts of this.

23         On the standing issue, counsel raises a very

24    point under *TransUnion* which has really made us look hard

25    at the question of standing in many, many cases

Proceedings                                    22

1    particularly cases like these that have statutory

2    penalties and so forth.  But in this instance, I believe

3    that the allegations are sufficient.  And of course when

4    I'm ruling on a motion to dismiss, I have to assume the

5    allegations to be true and I have to draw all inferences

6    in favor of the non-movant, and that's what I'm doing.

7    And in doing that I do believe there's sufficient

8    inference here the that the plaintiff had some actual

9    concrete loss if in fact the claim proves to be the case.

10   That is he was entitled to weekly pay and he got biweekly

11   pay.  There is based on time value of money some

12   inferential basis to believe that there was some loss.

13   It could be very small.  But as Judge Kavanaugh wrote in

14   *TransUnion* I think, certainly in one of those recent

15   cases, he said look, any loss is loss.  Any kind of

16   injury, even the smallest amount, so it could be a

17   fraction of a cent.  And I believe it's a reasonable

18   inference or plausible inference.  Plaintiff could have

19   lost money either in the form of less money in the bank

20   earning less interest or buying things at a higher cost

21   because of inflation or something else like counsel

22   suggests, like inability.

23            So I think there's certainly enough there.  So

24   I'm going to deny that branch of the motion.

25            And then as to the class as but, the so-called

Proceedings                                      23

1    failsafe class argument, I'm going to deny those at this

2    juncture.  I'm not saying that I disagree.  In fact, I

3    have some instant questions about how we do this, whether

4    we do it by a title or whatever.  But I do think that

5    that's appropriately saved for the class certification

6    juncture assuming that we get there.  And of course I

7    remind everybody that at some point if we certify a class

8    here, we also have the right to decertify a class.  So

9    discovery will bear out that which we will be able to do

10   or not do if it works consistent with Rule 23.  So we'll

11   get to those issues.

12            So I'm denying those three prongs of the

13   motion.

14            As to the remaining piece, as I've already

15   indicated, I think there's a very interesting issue as to

16   whether there's a private right of action.  I was

17   surprised to learn that myself because I've seen these

18   cases for years and no one ever brought it to me until

19   recently.

20            So I'd like to give you some time to brief it.

21   As I indicated, I am getting briefs from another case on

22   August 29th.  Obviously I'm not going to make you spend

23   the last weeks of your summer doing this.  But I would

24   like to do it as soon as we can.

25            So let me start with offense counsel.  How long

Proceedings                                    24

1   would it take you to serve your brief just on that issue?

2           MS. HALE:  Just on the private right of action?

3           THE COURT:  Yes.

4           MS. HALE:  What's today?  The 5th.

5           THE COURT:  Yes.  Take your time so you can do

6   a good job.

7           MS. HALE:  I was going to say we have -- I know

8   my team has some vacations in August and Labor Day is

9   coming up.  Could we say September 16th?  Too far?

10          THE COURT:  Of course, of course.  I am

11  reminded of Judge Spatt.  You all might not remember

12  Judge Spatt who'd say what is this vacation nonsense?  It

13  is time for lawyers to do (indiscernible).

14          And plaintiff, how much would you like to

15  serve, let me make it clear, to serve, and we're going to

16  use the bundling rule here, a responsive brief to that?

17          MR. KOPEL:  30 days, please, your Honor.

18          THE COURT:  Okay.  So that brings us to about

19  October 16, something like that.

20          MR. KOPEL:  Yes, that sounds right.

21          THE COURT:  Okay.  And the time for reply for

22  the defendant, you want another week or so?  What do you

23  think?

24          MS. HALE:  Sorry, I was on mute.  Two weeks or

25  so?

Proceedings                           25

1              THE COURT:  Two weeks?  Yes.  Sure.

2              MS. HALE:  Okay.

3              THE COURT:  So two weeks for a reply.  At this

4  point, you will bundle all the papers and serve them all

5  at once, right?  And file them all at once I mean.

6              MS. HALE:  Yes.

7              THE COURT:  Don't file them --

8              MS. HALE:  Yes.

9              THE COURT:  It's kind of a nightmare for us

10 over here.

11             So you'll do that.  So what is that,

12 approximately I think 84 days I'll look for your filings.

13 I'll be looking forward to your filings in the midst of

14 all my jury trials and everything else.  But I'll look at

15 my clerks and say it's 84 days, where is that brief?  And

16 we'll dive right into it.  So I'll be looking forward to

17 that.  All right?

18             MS. HALE:  Okay.  Yes.

19             THE COURT:  Is there anything else I can do for

20 either side today?

21             MR. KOPEL:  Your Honor, just out of my

22 curiosity, does the Court intend on issuing a decision in

23 the *Birthwright* case, you know, ahead of our briefing?

24             THE COURT:  I don't like to issue advisory

25 opinions and so forth, but I'll tell you this.  I tend to

Transcriptions Plus II, Inc.

Proceedings                                      26

1    like to group them.  So you might see a joint opinion

2    issued for both opinions, for both cases.  So I mean you

3    could watch that one.  But I think I probably will hold

4    that until you guys file and then issue an opinion at the

5    same time.

6           MR. KOPEL:  Okay.  Thanks very much.  My only

7    other question is will -- I suppose the Court will enter

8    an order denying certain parts of the motion to dismiss?

9    Or is the order just kind of as spoken now?

10          THE COURT:  Yes, the law, as Judge

11   (indiscernible) said, the law does tumble from our left.

12   You can get a transcript of today if you really want it.

13   We'll probably enter a minute order indicating that the

14   rulings are on the record but you'll understand.  I've

15   denied 1, 3, and 4 and you're briefing 2.  Yes?

16          MR. KOPEL:  Thank you.  Understood.

17          MS. HALE:  Yes.

18          MR. KOPEL:  Thank you, your Honor.

19          THE COURT:  All right?

20          MS. HALE:  Thank you.

21          THE COURT:  Go have a great summer weekend and

22   I look forward to talking to you in the fall.  Okay?

23          MR. KOPEL:  Okay.  Thank you.

24          MS. HALE:  Thank you very much.

25                    (Matter concluded)

27

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **8th** day of **August**, 2022.


*Mary Greco*

Transcriptions Plus II, Inc.